# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* C.G.-1 and C.G.-2

No. 17-0965 (Hampshire County 17-JA-8 and 9)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother D.G., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's September 21, 2017, order terminating her parental rights to C.G.-1 and C.G.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed a petition alleging that both children suffered unexplained injuries while in the care of petitioner and her boyfriend, D.K. C.G.-1 suffered severe bruising to his genitals and C.G.-2 suffered unexplained burns on her wrist and leg, as well as bruising to her ear and jawline. Several hours passed after the discovery of C.G.-1's severe bruising before he was taken to a hospital. While being examined, C.G.-1 stated that "[D.K.] hit me." Petitioner could not explain the injuries but asserted that C.G.-1 would sleep walk and must have suffered the injuries in his sleep. Additionally, the DHHR alleged a previous incident in November of 2016, when the babysitter brought C.G.-2 to the hospital after noticing she was favoring one leg. Hospital staff concluded that C.G.-2 had suffered a spiral fracture to her leg, but did not conclude that the injury was the result of abuse or neglect. Petitioner could

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we refer to them as C.G.-1 and C.G.-2 throughout this memorandum decision.

also not explain this earlier injury. Petitioner waived her preliminary hearing on February 9, 2017.

The circuit court held an adjudicatory hearing, and the medical personnel who conducted the examinations testified that the trauma sustained by C.G.-1 was likely non-accidental. Additionally, the results from forensic interviews were admitted in which L.K, D.K's three-year-old son, accused D.K. of hitting C.G.-1. L.K stated that D.K. hit C.G.-1, threw C.G.-1 against the wall, and "bumped [C.G.-1]'s head on the floor." Petitioner testified and admitted that she failed to supervise her children, but did not have an explanation as to how the children suffered their injuries. Petitioner noticed C.G.-1's genitals were bruised upon changing C.G.-1's diaper in the morning but did not notice any bruising before putting C.G.-1 to bed the night before. Petitioner admitted that she, D.K., and the children were the only people in the home on the night the injury occurred, but she did not suspect D.K. was the perpetrator of the abuse. Petitioner consistently stated that she did not see D.K. abuse her son. Petitioner also testified that she did not hear C.G.-1 cry out or scream on the night the injuries occurred. However, medical personnel testified that the child would have likely made significant noise based on the severity of the bruising. With regard to C.G.-2, medical personnel testified that the spiral fracture could have been accidental trauma, but petitioner offered no explanation as to a reasonable cause. Further, petitioner's explanation for C.G.-2's burns was deemed incredible by medical personnel, and, therefore, the burns were also deemed likely non-accidental. Ultimately, the circuit court adjudicated petitioner and found that neither she nor D.K. offered any reasonable explanation for the children's significant injuries. It also found that petitioner and D.K. were the only adults in the home when the children sustained those injuries. Petitioner moved for a post-adjudicatory improvement period, and the circuit court deferred ruling on that motion.

In May of 2017, the circuit court held a dispositional hearing, during which the DHHR moved for the termination of petitioner's parental rights. The circuit court ordered a parental fitness and psychological examination for petitioner and continued the dispositional hearing. The circuit court also deferred ruling on petitioner's motion for an improvement period.

At the continued dispositional hearing, the circuit court reviewed the psychologist's evaluation and found petitioner still did not accept responsibility for her children's injuries. Notably, when speaking with the psychologist, petitioner characterized the injuries as "unexplained." Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and continued the dispositional hearing. Further, the circuit court ordered that the psychologist prepare a supplemental evaluation prior to the next dispositional hearing and be given further information regarding the court's previous findings of abuse and neglect and the medical records of the children.

In August of 2017, the circuit court held a final dispositional hearing and the petitioner moved for a post-dispositional improvement period. The psychologist testified that she met with petitioner a second time in preparation for the supplemental evaluation and that petitioner appeared to have had an "epiphany" with regard to her children's injuries. Petitioner now believed it was "likely" that D.K. injured her children, but that the babysitter also could have perpetrated the abuse. The psychologist testified that she believed petitioner could be successful in an improvement period and that her youth and inexperience contributed to her lack of insight.

However, the psychologist was unaware of previous court findings, such as C.G.-1's likely pain-induced outburst upon receiving the bruising, a delay in treatment for C.G.-1, and petitioner's continued involvement with D.K. When confrontation with those findings, the psychologist indicated that those factors concerned her. Additionally, the grandfather testified that he had seen petitioner and D.K. together at least twice since the adjudicatory hearing. Petitioner refused to testify, even after the circuit court explained that a negative inference could be drawn from her refusal to testify. The circuit court also took note of two supervised visitations in which C.G.-1 referenced D.K. and stated "[D.K.] can't hit me" and then acted out and became aggressive.

Thereafter, the circuit court found that petitioner's "failure or refusal to testify during the disposition hearing can certainly be determined as affirmative evidence of culpability" and that petitioner's "silence further deprives this [c]ourt of what is necessary" to clearly and convincing prove that petitioner was willing and able to participate and follow-through with an improvement period. Further, the circuit court found that petitioner's "epiphany" was incredible because "she reiterated that the abuser could be the babysitter; the evidence presented clearly does not support such a position or reality." The circuit found the conditions and circumstances causing the injuries to the children were rendered uncorrectable without an acknowledgment of the real problems and issues. The circuit court also found that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future and that the children's safety could not be ensured in their mother's custody. Ultimately, the circuit court denied petitioner's motion for a post-dispositional improvement period, terminated her parental rights, and granted post-termination visitation in its September 21, 2017, order.[2] Petitioner appeals that order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The children's non-abusing father retained his parental rights, although he currently does not exercise custody and, according to the parties, plans to relinquish his rights to allow his father to adopt the children. The children are currently placed in the grandfather's home. The permanency plan is adoption therein.

Syl. Pt. 1, *In re Cecil T*., 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Petitioner argues that the evidence shows she made progress and gained insight throughout the proceedings, and that she could be successful if granted an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002).

First, the circuit court did not err in denying petitioner's request for an improvement period because the court has the discretion to deny an improvement period when no improvement is likely. Petitioner testified that she did not see the injuries before C.G.-1 went to bed, but noticed them immediately upon changing his diaper the next day. The only individuals with access to C.G.-1 that night were herself, D.K., and the other two children. Petitioner was confronted with photographs and medical testimony explaining the severity of the injuries and the likelihood that those injuries were non-accidental. Further, L.K. apparently witnessed D.K. hitting C.G.-1 on some occasions and C.G.-1 stated "[D.K.] can't hit me" during supervised visitation with the mother. Still, petitioner refused to conclude that D.K. abused her children. Petitioner argues that she gained insight during the proceedings, which showed that improvement was possible; however, she continued to assert that the babysitter may have committed the abuse, despite the fact that the evidence did not support such an assertion. Additionally, the record shows that petitioner continued to see D.K. throughout the proceedings. "Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013). Because of petitioner's failure to acknowledge the conditions of abuse and neglect, we find no error in the circuit court's ruling.

Petitioner further argues that she presented clear and convincing evidence that she would participate in an improvement period and argues that the circuit court erred in taking a "strong negative inference" from petitioner's refusal to testify. Petitioner argues that the psychologist testified petitioner could benefit from an improvement period. Yet, the psychologist was unaware of key factors, such as petitioner's continued interaction with D.K., the delay in C.G.-1's treatment, and that petitioner never mentioned hearing C.G.-1's likely cries of pain. These factors support the conclusion that petitioner failed to acknowledge the basic truth of the abuse

or neglect and, thus, undermined the psychologist's opinion. Further, we have previously held that, in an abuse and neglect proceeding, an individual's silence may be used as affirmative evidence of that person's culpability. Syl. Pt. 2, *In re K.P.*, 235 W.Va. 221, 772 S.E.2d 914 (2015). Further, the circuit court explained to petitioner that her refusal would draw a negative inference, yet she still refused to testify. The circuit court properly considered her refusal as evidence of her culpability and as a protective instinct for either D.K. or herself, rather than for her children. Accordingly, we find no error in the circuit court's denial of petitioner's motions for an improvement period.

Second, the circuit court properly terminated petitioner's parental rights because she failed to identify her children's abuser. West Virginia Code §49-4-604(b)(6) provides that a circuit court may terminate a parent's parental rights when it finds that "there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child." Further,

> "[p]arental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syllabus Point 3, *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 4, *In re Harley C.*, 203 W.Va. 594, 509 S.E.2d 875 (1998). Petitioner's children were subjected to multiple non-accidental injuries while in petitioner's care. C.G.-1 suffered severe bruising to his genitals; C.G.-2 suffered a spiral fracture in her leg, multiple burns, and bruising on her face. Petitioner offered no credible explanation for the injuries. Further, at the final hearing, petitioner continued to assert that the abuse could have been perpetrated by the babysitter, who had no access to C.G.-1 when the bruising occurred. It is clear from the record that petitioner never came to a definitive conclusion of who committed the abuse, nor did she take any action to identify the abuser. The circuit court could not ensure the safety of the children while they were in petitioner's care. Therefore, the circuit court did not err in finding there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse or that termination was necessary for the children's welfare. Accordingly, we find no error in the termination of petitioner's parental rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. On appeal, respondents proffered that the biological father of C.G.-1 and C.G.-2, Z.G., would relinquish his parental rights pending the result of this appeal. Accordingly, we direct the circuit court to hold a hearing that addresses Z.G.'s parental rights and determine the most appropriate permanency plan for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as

to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 21, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker